STATE OF NEW JERSEY, PLAINTIFF, v.
ARTHUR WHITTAKER, DEFENDANT.

Superior Court of New Jersey
Law Division
(Criminal)

Decided May 13, 1976.

360

*Mr. Mark F. Hughes, Jr.* for defendant (*Messrs. Kraft* and *Hughes,* attorneys).

*Mr. James W. Hurley,* Assistant Prosecutor, for the State (*Mr. Stephen R. Champi,* Prosecutor of Somerset County).

MEREDITH, J. S. C.  Defendant's counsel moved for dismissal of the indictment at the end of the State's case. Defendant was indicted for violating *N. J. S. A.* 45:19–10, which prohibits the unlicensed "engag[ing] in the private detective business or as a private detective or investigator * * *." Counsel argued that the State's proofs may have

shown that defendant engaged in conduct which constituted a single or isolated transaction of detective work, but the proofs failed to show that defendant engaged in a *business*. For the reasons expressed in this opinion, the court has adopted counsel's argument and granted the motion.

Giving the State the benefit of the most favorable factual inferences that can be drawn from its evidence, the court makes the following findings of fact.

Defendant is licensed to do detective work in New York State. He runs a detective business in New York City. He has no office in New Jersey. He has never advertised in New Jersey. So far as the record shows, he has never worked in New Jersey except for the work which is the subject of this indictment.

On November 28, 1973 a larceny occurred on Miss Doris Duke's estate in Hillsborough Township, New Jersey. As a result Miss Duke and her attorney contacted defendant in New York. Miss Duke's testimony showed that her original purpose in contacting him was centered upon investigation of the larceny. Various conversations were had, and defendant visited Miss Duke's estate to discuss not only the specific larceny but also the general security of the estate.

Thereafter defendant conducted an investigation of the larceny by, among other things, engaging a firm to perform polygraph examinations of the hundred or more employees who worked on Miss Duke's estate. The probable illegality of these examinations under *N. J. S. A.* 2A:170–90.1 is not an issue in this case.

In addition, defendant caused the estate to engage additional security guards, both to act as undercover detectives to investigate the larceny and also to provide additional protection for, among other concerns, the wildlife on the estate.

The entire duration of Miss Duke's employment of the defendant amounted only to some thirty odd days, through December of 1973 and early January of 1974. What started as a harmonious relation ended discordantly over a fee dispute.

It is this court's obligation to determine whether this set of facts can support an indictment under *N. J. S. A.* 45:19–10. As quoted previously, this statute makes it unlawful for an unlicensed person to "engage in the private detective *business* or as a private detective or investigator * * *" (emphasis supplied).

The authorities suggest, and the prosecutor seemed to concur, that the law interprets the word "business" and the phrase "to engage in a business" and similar phrases, when they are used in professional licensing statutes, as special terms of art which, unless explicitly otherwise defined, encompass only a continuous, repeated, on-going, regular course of conduct. That conduct which constitutes only a single transaction, or even a few isolated transactions, does not fall within the meaning of the phrase "to engage in a business." See generally, Annotation, "License — Single Transaction," 93 *A. L. R.* 2d 90 (1964).

In a civil case, *Fox v. Smith,* 197 *N. Y.* 527, 90 *N. E.* 1158 (Ct. App. 1909), rev'g 123 *App. Div.* 369, 108 *N. Y. S.* 181 (App. Div. 1908), the highest court of New York had occasion to interpret a licensing statute which criminalized "engag[ing] in the business of a private detective for hire or reward" without the proper license. The plaintiff, unlicensed, had agreed to act as a private detective to watch the movements of a husband and report to the wife, for which he was promised a fee. Plaintiff devoted considerable time and money to the project until defendant wife refused to pay. The lower courts dismissed plaintiff's contract suit, holding that his activities had been barred by the statute. However, the dissenting opinion of the Appellate Division argued that the phrase "engaging in business" was not meant to touch an occasional employment of an individual in a specific instance, but instead was carefully confined to controlling a regular business. The Court of Appeals affirmed this dissent as the law of the case and granted a new trial.

A similar result from our own jurisdiction is reported in *Wensley v. Godby,* 101 *N. J. L.* 325 (Sup. Ct. 1925). A

statute, *L.* 1921, *c.* 141, § 1 *et seq.,* made it "unlawful for any person * * * to engage * * * in the business of a real estate broker * * * without first obtaining a license." Plaintiff, unlicensed, had sued to recover a commission agreed upon in writing for services in effecting a sale of real estate. The transaction was an isolated one, and "the evidence fail[ed] to prove that [he] [was] engaged in the business." 101 *N. J. L.* at 325. The lower court had denied recovery because of the statute. The former Supreme Court reversed. It referred to previous New Jersey authority construing the statutory words "transacting any business," and thereby concluded,

> We think, therefore, a proper construction of the Act of 1921 does not invoke its application to an individual contract of brokerage, there being no evidence that the appellant was engaged in the business generally, or that the contract in question was part of a course of similar transactions. [at 327]

The subsequent history of *Wensley* is worthy of comment. The Court of Errors and Appeals explicitly affirmed *Wensley* and its "individual contract" holding in *Waring v. Jobs,* 104 *N. J. L.* 158, 160 (1927). Thereafter, the State Legislature amended the statute to provide, among other changes, that "[a]ny single act, transaction or sale shall constitute engaging in business within the meaning of this article." *L.* 1931, *c.* 286. § 1. The court in *Kenny v. Paterson Milk & Cream Co.,* 110 *N. J. L.* 141 (E. & A. 1932) reversed the result of *Wensley* and *Waring,* in a similar factual setting, by virtue of the amendment. See also, *Corson v. Keane,* 4 *N. J.* 221, 227 (1950). Thus the Legislature is aware that it can proscribe isolated transactions when it chooses the proper statutory language.

The problem arose again in *Dane v. Brown,* 70 *F.* 2d 164 (1934), in which the United States Court of Appeals for the First Circuit had to interpret another New Jersey statute, *L.* 1902, *c.* 29, § 13, as amended by *L.* 1913, *c.* 150, § 2, and *L.* 1915, *c.* 83, § 1 (1924 Suppl. § 11–13). The

statute provided, in relevant part, that "If any person shall pursue the practice of architecture in this state, or shall engage in this state in the business of preparing plans * * * for the erection * * * of buildings, * * * without a certificate * * *, he shall be liable to a penalty * * *." Plaintiff was a Massachusetts architect whom the defendant contacted in Massachusetts for the purpose of engaging his services to construct a building in New Jersey. Plaintiff completed the plans and specifications in Massachusetts, but visited New Jersey frequently in order to supervise the construction. Thereafter plaintiff sued for his architectural services. Defendant tried unsuccessfully to induce the federal District Court to dismiss the complaint by virtue of the statute. That court refused and rendered a judgment for plaintiff.

The Court of Appeals affirmed:

> It is well settled, we think, that such expressions as "pursue the practice of any profession or business," "practicing architecture," "engaging in the practice of law," "engaging in business," and similar terms, contemplate a course of business or professional practice, and not single isolated acts arising from unusual circumstances. [at 165]

Of special significance to the case at bar was the court's additional observation:

> Persons eminent in the professions * * * are not infrequently called across state lines into consultation. It has not been supposed that by so doing they violate the registration laws of the state into which they go as ordinarily drawn, even when such statutes contain no explicit exception covering such cases. [at 166]

This court chooses not to dwell on this language, except to note that defendant's foreign licensing and his foreign office, and his absence of any office in this State, are evidential of his intention not to run a business in New Jersey.

Again, subsequent legislative history is relevant. The New Jersey Legislature amended the statute interpreted in *Dane* by, among other changes, adding the sentence, "Any single act or transaction shall constitute engaging in business or

the practice of architecture within the meaning of this act."
*L.* 1934, *c.* 117, § 1. By virtue of this and the previously
discussed amendment to the real estate broker licensing stat-
ute, the court is compelled to conclude that the Legislature
is aware of the particular interpretation that may accom-
pany the phrase "to engage in the business."

The precedential value of *Dane v. Brown,* at least insofar
as it suggested that a single isolated act cannot constitute
the practice of a profession, is diminished, and defendant's
argument is somewhat weakened, by the later case *In re
Baker,* 8 *N. J.* 321 (1951), wherein our Supreme Court ex-
plicitly held that the doing of a single act, *e. g.,* the draw-
ing of a single will, can constitute the practice of law and
subject the unlicensed actor to punishment for contempt.
However, *Baker* is not dispositive of the issues before this
court.

Even prior to the decision in *Baker* there was no ques-
tion that the current New Jersey Supreme Court is vested
by the common law and the State Constitution with broad
authority to control the practice of law. Under this au-
thority the Supreme Court clearly could have promulgated a
rule, had it chosen to do so, prohibiting any and all in-
fringements upon the attorneys' monopoly, even those in-
fringements which constitute but a single isolated act, just
as the State Legislature can enact a statute, if it chooses
to do so, prohibiting any and all unlicensed acts, including
isolated acts, in the nature of practicing some profession.

At the time of the *Baker* decision the Supreme Court had
promulgated no such court rule prohibiting acts, even iso-
lated ones, in the nature of unlicensed practice of law.
Nevertheless, under the peculiar circumstances of the Baker
case, involving as it did two defendants caught in a nefari-
ous attempt to defraud a senile testator, the Supreme Court
determined that there was no injustice in applying such a
rule to the case before it. Thereafter, other amateur would-
be attorneys would have sufficient due process notice to know

that they could not draw an occasional or even an isolated will.

Inasmuch as the *Baker* case did not interpret a previously written statute or court rule, but involved instead the broad authority of the New Jersey Supreme Court to control the practice of law, it follows that defendants were thwarted in attempts to present arguments on the proper construction of statutory phrases such as "engaging in the business or practice of law."

In any event, nothing in the *Baker* case suggested that the current Supreme Court intended to overrule the previous Supreme Court in *Wensley v. Godby, supra,* or the previous Court of Errors and Appeals in *Waring v. Jobs, supra,* when they held that statutory language such as "transacting business" is not meant to include isolated acts unless the Legislature explicitly states otherwise.

In the case at bar the prosecutor attempted to obviate the discussion of this history of case law by arguing that the State's evidence has demonstrated that defendant was engaged in business, or at least in multi-transactional conduct. The prosecutor argued that there were at least two purposes in defendant's conduct: to investigate a larceny and to provide security. He further argued that there were at least two transactions: the giving of polygraph examinations and the providing of security guards.

This court disagrees. Defendant engaged in no business in New Jersey. He did not advertise here: Miss Duke went to New York to find him. The primary purpose of the subsequent conduct was to investigate the larceny, and in connection therewith to provide sufficient security to prevent recurrence. In the cases cited above, *e. g., Fox v. Smith* and *Wensley v. Godby,* the actors performed several individual acts but, especially in view of the fact that only a single contract between actor and principal was involved, the courts had no trouble in determining that the conduct constituted but a single or isolated transaction for the pur-

pose of ascertaining whether the actor was "engaged in business."

Having held that defendant's conduct constituted a single transaction, the court is compelled to decide the difficult question whether *N. J. S. A.* 45:19–10 proscribes a single transaction.

In abbreviated form, *N. J. S. A.* 45:19–10 makes it unlawful for an unlicensed person to "engage in the private detective business *or as a private detective or investigator* * * *" (emphasis supplied). The prosecutor has properly refrained from arguing that the State's case is enhanced by the above emphasized portion of the statute, making it unlawful to "engage * * * as a private detective or investigator * * *." In *N. J. S. A.* 45:19–9(c) the terms "private detective" and "investigator" are defined to "mean and include any person who * * * *conducts a private detective business*" (emphasis supplied) without the aid of employees or associates. Thus, even if these terms were relevant to this case, the main question would remain what the Legislature intended to cover in the term "private detective business" and, in particular, whether isolated transactions are so covered.

█ The term "private detective business" is defined in three rather complicated sentences contained in *N. J. S. A.* 45:19–9(a). In simplified summary, the first two sentences explain mainly what the term includes. The third sentence lists various specialized activities which the Legislature chose to exclude. The third sentence is irrelevant to the issues at bar, but the first two sentences warrant closer examination.

In abbreviated form, the first sentence states, "The term 'private detective business' shall mean the business of conducting a private detective agency or * * * any *investigation* or investigations" (emphasis supplied) for certain information gathering purposes. The prosecutor argued that the presence of the singular noun "investigation" displays a legislative intent to proscribe a single transaction, to wit, the

conducting of a single investigation. His argument is enhanced, he proposed, by the noun's juxtaposition with its plural form. Had the Legislature wished to proscribe only multiple investigations, it would not have induced a redundancy by use of the singular form.

The court disagrees. The proscription is against engaging in the *"business* of conducting * * * any investigation * * *" (emphasis supplied). One could conceivably make a multi-transactional business out of conducting a single investigation, *e. g.,* of an airplane crash where hundreds of paying clients are available. Also, a detective may be in the detective *business* within the intendment of *N. J. S. A.* 45:19–9(a) if, although he is engaged only in a single transaction of conducting a single investigation, he nevertheless is simultaneously engaged in conduct of a multi-transactional nature covered elsewhere in the section. The previously discussed cases compel this court to hold that the business described in the first sentence of *N. J. S. A.* 45:19–9(a) does not cover a single transaction.

The second sentence of *N. J. S. A.* 45:19–9(a) presents greater difficulty. In abbreviated form the second sentence states, "Also it [*i. e.,* the term 'private detective business'] shall mean the furnishing * * * of guards * * *" such as those which defendant furnished for Miss Duke's estate. The prosecutor argued, quite persuasively, that this sentence should have the same meaning as the following sentence: "Also the term 'private detective business' shall mean *a single instance* of furnishing guards."

It would be easy for the court to conclude that these sentences are equivalent. On the one hand, conduct which otherwise constitutes the furnishing of guards hardly ceases to do so merely because it is contained within a single instance. Conversely, if the statute intends to proscribe even a single instance of furnishing guards, then it would surely also proscribe more complex multi-transactional conduct.

However, there are counter-arguments. Defendant could argue that the second sentence of *N. J. S. A.* 45:19–9(a) is an ellipsis. The first sentence has the form: "The term * * * shall mean *the business of* * * *" (emphasis supplied) doing various things. The grammatical preference for parallel structure may compel a reading of the second sentence in similar vein: "Also it shall mean *the business of* furnishing * * * guards."

There is still a better counter-argument to the prosecutor's proposal. A logician would likely oppose a definition or series of definitions which reduce to the form, "The term 'business' shall mean a business." However, statutes frequently fail to attain scientific precision. Whatever other attributes the Legislature may have intended to convey in the second sentence of *N. J. S. A.* 45:19–9(a), nevertheless it is still a "business" which the Legislature was defining. It is reasonable to assume that the Legislature wanted the term "private detective business" to retain the ordinary qualities of a business. The case law has held that one of these qualities is a course of conduct beyond a single transaction. If the Legislature wishes to remove this quality, then it should explicitly so state, just as it has stated in professional licensing statutes for architects and real estate brokers.

■ ■ Thus, the court holds that *N. J. S. A.* 45:19–10 does not proscribe a single or isolated transaction. The court is aware of the policy considerations which should compel a contrary result.

There is no sound reason why the doing of a single act * * * does not constitute the practice of law just as most certainly the performance of a single operation by a surgeon constitutes the practice of medicine. The amateur at law is as dangerous to the community as an amateur surgeon would be. [*In re Baker, supra,* 8 *N. J.* at 338]

Likewise, the amateur detective is dangerous to the community. Nevertheless, defendant is entitled to the prece-

dential benefit of the case law of this and other jurisdictions holding that "business" means more than an isolated transaction, and he is furthermore entitled to an interpretation of *N. J. S. A.* 45:19–10 which resolves ambiguity, if there be any, to his favor. The solution to the problem of increased danger to the community must lie, as previously, in the Legislature.