Arthur **WHITTAKER** and Theodora L. Whittaker, Plaintiffs,

v.

Doris **DUKE**, Defendant.

No. 77 CIV 875 (LBS).

United States District Court, S. D. New York.

April 17, 1979.

---

Bronstein, Van Veen & Bronstein, New York City, Peter E. Bronstein, New York City, of counsel, for plaintiffs.

Townley & Updike, New York City, Michael S. Belohlavek, New York City, of counsel, for defendant.

## OPINION

SAND, District Judge.

Defendant has moved for summary judgment in this action for malicious prosecution, asserting that as a matter of New Jersey law, which controls here, plaintiff cannot establish the four elements necessary for such a cause of action. We conclude that as to one of the four elements, there exist no issues of material fact and plaintiff cannot prevail as a matter of law. The motion, therefore, is granted.

■ The elements of a malicious prosecution are as follows:

(1) A criminal proceeding instituted or continued by the defendant against the plaintiff;

(2) Termination of the proceeding in favor of the accused;

(3) Absence of probable cause for the proceeding;

(4) "Malice", or a primary purpose other than that of bringing an offender to justice.

Prosser, *Law of Torts* 835 (4th Ed. 1971). The question before us is whether, on the undisputed facts, plaintiff has established the first of these elements—whether defendant "instituted or continued" the criminal proceeding which was brought against Mr. Whittaker.

The background of this action, and the facts relating to the "institution or continuation" element, are as follows. At all relevant times, plaintiff was a principal of Whittaker Associates, a New York State partnership engaged in the business of "investigation". Whittaker was a licensed private detective in New York State, but was not so licensed by the State of New Jersey.

On November 28, 1973, a burglary occurred on defendant's property in New Jersey. The following day, defendant retained Whittaker to perform certain services, the precise nature of which is in dispute. Plaintiff [1] contends that he was retained to assess the security system on the property, while defendant asserts that he was hired, at least in part, to investigate the burglary. Under New Jersey law,

---

1. There are two plaintiffs in this action: Arthur Whittaker and Theodora Whittaker, both of whom were principals in Whittaker Associates. As only Arthur Whittaker was involved in the events underlying the lawsuit, we will refer only to him as "plaintiff".

No person, firm, association or corporation shall engage in the private detective business or as a private detective or investigator . . . without having first obtained from the superintendent a license to conduct such business. . . Any person, firm, association or corporation who shall violate any of the provisions of this section shall be guilty of a misdemeanor. (N.J.S.A. 45:19–10.)

In the course of plaintiff's activities on the Duke property, he engaged a firm of polygraphers to make polygraph examinations of the employees on the Duke estate. In January, 1974, a guard employed by the Animal Medical Center (a research hospital that had facilities at the estate) filed a complaint with the New Jersey Department of Labor and Industry with respect to disputed wages. As a result of that complaint, the Department of Labor became aware that polygraph tests had been conducted at the Duke estate. The Animal Medical Center was represented in this complaint by William F. Tompkins, Esq., who also at that time was representing it in an action against Duke. Tompkins brought to the attention of the Department of Labor the fact that polygraph tests had been administered by Whittaker Associates, and was directed by the Department to refer the matter to "the proper agency". On September 9, 1974, Tompkins wrote to Matthew P. Boylan, Esq., the Director of Criminal Justice of the State of New Jersey.

In October, 1974, the New Jersey State Police conducted an investigation of Whittaker's activities at the Duke premises. In connection with that investigation, Duke was interviewed on October 28, 1974 by a detective of the New Jersey State Police. The results of the investigation were given to the Somerset County Prosecutor's office, which presented the case to the Somerset County Grand Jury. An Assistant Prosecutor spoke with Duke immediately before she testified before the Grand Jury on September 17, 1975. On that day, the Grand Jury

indicted Whittaker under N.J.S.A. 45:19–10. Trial was held in June, 1976, at which Duke also testified. On motion of defendant, the charges were dismissed.[2]

No contention has been made that Mr. Tompkins acted as Duke's agent or that his actions can be attributed to her. Indeed, Tompkins and Duke were in an adversarial position at the time with respect to the AMC litigation against Duke.

Rather, plaintiff asserts that defendant herself "instituted or continued" the criminal prosecution against him in that she lied at critical points in the proceedings, under such circumstances that her false statements "set the proceedings in motion against him or caused their continuance". Defendant vigorously denies plaintiff's claims respecting her statements and testimony and has submitted an affidavit stating that such statements and testimony were "truthful and accurate to the best of my recollection". (¶¶ 4, 9).

Assuming, for purposes of this motion, that plaintiff's allegations are true and that defendant did lie to the New Jersey detective investigating Mr. Whittaker's activities, to the grand jury and at trial, the question before us is whether such acts constitute "institution or continuation" of the prosecution. We conclude that they do not. One who merely responds to requests for information or who testifies as a witness does not, by those acts, institute or continue a prosecution.

The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his appearing as a witness against the accused, even though his testimony is perjured, since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability. On the other hand, if he advises

2. The court based its dismissal on its finding that Whittaker had not been involved in a "business", but rather had engaged in only "a single or isolated transaction of detective work". *State v. Whittaker,* 143 N.J.Super. 358, 362 A.2d 1323 (Super.Ct.Law Div.1976).

or assists another person to begin the proceeding, ratifies it when it is begun in his behalf, or takes any active part in directing or aiding the conduct of the case, he will be responsible. The question of information laid before prosecuting authorities has arisen in many cases. If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable.

Prosser, *supra,* at 836–37.

The Restatement (2d) of Torts makes the same point:

> In order that there may be liability under the rule stated in this Section [respecting continuation of criminal proceedings], the defendant must take an active part in their prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. (§ 655, Comment c).

There has been no allegation that Duke took an active part, within the meaning of the above passages, in instigating or encouraging the prosecution, in directing or aiding the conduct of the case, or in advising or assisting another person to begin the proceeding. Nor did she come forward and present information to the authorities in the absence of a request for such information in the context of an ongoing investigation.

Plaintiff asserts, however, that Duke was more than a mere witness in the proceeding against him. She was a "vital" witness without whose testimony the case would not have been prosecuted. In support of this contention, plaintiff offers the deposition testimony of the New Jersey prosecutor. Plaintiff further argues that New Jersey has adopted a "proximate cause" test for the element of institution or continuation, and that defendant's acts most certainly were such a proximate cause of the prosecution.

■ While there is language in the New Jersey cases to the effect that the courts will look for the "proximate and efficient cause of maliciously putting the law in motion", we do not understand this to mean that the law of New Jersey differs in the elements of a malicious prosecution cause of action from the law of other states. In the two cases cited by plaintiff for this rule, the factual circumstances were such that the usual formulation of a malicious prosecution cause of action did not precisely fit the case. See *Devlin v. Greiner,* 147 N.J.Super. 446, 371 A.2d 380 (Law Div.1977); *Seidel v. Greenberg,* 108 N.J.Super. 248, 260 A.2d 863 (Law Div.1969).

In *Seidel,* the plaintiff had been prosecuted for a crime which the defendants in fact had committed. Knowing of the prosecution, and of plaintiff's innocence, defendants failed to come forward with such information or in any way attempt to stop the prosecution. The court noted that defendants had not themselves made any accusations against plaintiff which set the proceedings in motion, or caused their continuance, and that

> [i]t is the normal rule in malicious prosecution cases that mere passive knowledge of, or acquiescence or consent in, the acts of another who causes a prosecution, is not sufficient to make one liable, and that in order to impose liability there must be some affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution or in affirmative-

ly encouraging its continuance after it has been instituted.

*Seidel v. Greenberg,* 260 A.2d at 868.

The court in *Seidel* also noted that "[i]t is commonly stated that an action for malicious prosecution is not favored in the law, and this is so because of the obvious public policy of having criminals brought to the bar of justice and encouraging citizens to come forward to aid in the prosecution of criminals without fear of civil suits for damages for their acts in so doing." *Id.* It was only "on the facts of *this* case", *id.* (emphasis in original), that the court held plaintiff to have a cause of action in malicious prosecution, emphasizing the defendants' intentional, wrongful acts and the lack of a "nicely defined or established 'cubbyhole' of the law" in which plaintiff's case might more properly fit. *Id.*

The *Devlin* case also involved an unusual set of circumstances. Defendant was a private detective; on the basis of a report he prepared, a husband who had retained his services instituted a divorce action against his wife, the plaintiff. The court noted "the obvious fact" that the defendant had not himself instituted the action, and that the circumstances of the case did not fit the conventional pattern for a malicious prosecution action. It held, however, that

> [o]ne who, without probable cause, advises or assists another person to begin a proceeding, should not be exempted from liability simply because his name does not appear on the complaint. This is particularly so where it is alleged that the intentional rendering of false information actually induced the lawsuit.

*Devlin v. Greiner,* 371 A.2d at 394. As in *Seidel,* the court stressed the disfavor in which the tort of malicious prosecution is traditionally held.

In contrast to the above cases, the action before this Court involves a classic set of circumstances. The sole allegation against defendant is that she, as a witness before the grand jury and at trial, and in response to a criminal investigation, gave false testimony.[3] In contrast to *Devlin,* there is a complete absence of allegations of inducing or instigating conduct. Plaintiff has presented us with no cases, whether from New Jersey or any other jurisdiction, in which a witness such as Duke has been held liable for malicious prosecution.

Nor have we found any basis on which to distinguish between a witness who is "essential" or "vital" to the prosecution's case and one whose testimony is merely cumulative or tangential. Plaintiff has provided no cases in support of this distinction, nor have we found any. Moreover, there is no basis in sound policy for drawing such a distinction. As the courts and commentators have noted, "the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability". Prosser, *supra.* This concern applies as well to the vital witness as to any other. Even if such were not the case, the line plaintiff seeks to draw would be a difficult one indeed to discern.

If the facts of this case support an allegation of instigation or continuation, then indeed every grand jury witness whose testimony is vital to the prosecution and who is alleged to have testified falsely will be subject to suit for malicious prosecution if the accused is acquitted. Such a rule would not only inhibit the furnishing of testimony by key witnesses, it would tend to make all such witnesses persons "interested" in the outcome of the prosecution, since only a conviction of the accused would immunize them from civil suit. Unlike the two New Jersey cases discussed above which involved very unusual circumstances, this case goes to the heart of the policy considerations underlying the disfavor in which malicious prosecution actions are held.

---

3. The indictment in the criminal action was returned on the eve of trial in a civil action brought by Whittaker against Duke for payment of his fees. At oral argument on this motion, the Court inquired of counsel for plaintiff whether there was any contention that the timing of the criminal proceeding was in any way attributable to any acts or influence of the defendant. With commendable candor, counsel replied that no such claim was made, and that the sole allegation against Duke concerned her role as a witness in the criminal proceeding.

We conclude that, as a matter of law, defendant Duke did not "institute or continue" the proceedings against plaintiff, and that plaintiff has consequently failed to establish the first element of his cause of action. Defendant's motion for summary judgment is granted.

SO ORDERED.