(626 P.2d 214)
No. 51,358

GEORGE HOKANSON, *Appellant,* v. JOSEPH M. LICHTOR, H. LEE TURNER, and STATE FARM MUTUAL INSURANCE COMPANY, a Corporation, *Appellees.*

Opinion filed March 27, 1981.

*Donald E. Shultz,* of Dodge City, for appellant.

*Robert C. Foulston,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for appellees.

Before ABBOTT, P.J., REES and MEYER, JJ.

ABBOTT, J.: The plaintiff, George Hokanson, appeals from an order dismissing his petition for failure to state a claim upon which relief may be granted.

The defendant State Farm Mutual Insurance Company (State Farm) insured Margaret E. Faulkner against liability arising out of the use of an automobile. She was involved in an automobile-motorcycle accident. The cycle was operated by plaintiff. State Farm employed defendant attorney H. Lee Turner to represent Margaret E. Faulkner. Turner and State Farm employed defendant Joseph M. Lichtor, an orthopedic surgeon, to examine Hokanson and to appear as a medical expert at trial. Counsel for Hokanson was of the opinion that Lichtor's medical report contained falsehoods, and prior to trial of the personal injury case he wrote Turner and threatened to sue Lichtor if Lichtor so testified.

Lichtor did testify in the personal injury case, which resulted in a jury verdict for Hokanson in the amount of $50. The trial judge, the Honorable Robert Baker, was of the opinion he had erred in admitting certain evidence, and he granted a new trial both on the issue of damages and on liability. No appeal was taken from that decision. While the personal injury case was awaiting retrial, Hokanson filed a lawsuit against State Farm, Turner and Lichtor, alleging that they had conspired to present perjured testimony through Lichtor and requesting actual and punitive damages. He further requested that all three defendants be enjoined from acting in concert to perpetuate a similar fraud on other courts and litigants within the State of Kansas and specifically that they be enjoined from so acting in the retrial of the personal injury case. In addition, the prayer sought to restrain Lichtor from testifying in the retrial.

The personal injury action was retried, with the Honorable Don Smith presiding, and resulted in a jury verdict finding Hokanson more than 50 percent at fault. Lichtor was permitted to testify, and he was extensively cross-examined. No appeal was taken from that judgment.

A month after the personal injury case was decided, the trial court in this case sustained defendants' motion to dismiss plain-

tiff's petition for failure to state a cause of action. Plaintiff appeals.

Plaintiff argues that the trial court was premature in dismissing the petition; that he stated a cause of action against each of the defendants alleging willful and false manipulation of a civil trial that resulted in a verdict and judgment against the defendants. Plaintiff argues his cause of action encompasses more than perjury and compares his allegations to abuse of process, stating:

"What we have charged specifically is that Doctor Lichtor is an hireling, a professional witness who, by agreement, prostitutes his professional opinion for hire. We charge, in addition, that with the knowledge and participation of counsel and the indemnity insurers, who are the employers of both counsel and the witness, an abuse is made, not of a paper process such as summons, subpoena or warrant, but the trial process itself."

As we view the record before us, and after having heard oral argument, plaintiff's intended cause of action ultimately depends upon one alleged tortious incident—the false testimony of Lichtor at the first trial, supported by the conspiracy of Turner and State Farm. Thus, in our opinion, the question presented is whether a civil action exists for either perjury or conspiracy to commit perjury.

Defendants suggest we need not reach the merits, because the verdict and judgment against plaintiff in the second injury action renders the question moot.

An appellate court will not consider and decide questions raised on appeal when it is clear from the record that any judgment it might render with respect thereto would be unavailing or ineffective. *Carr v. Diamond*, 192 Kan. 336, 338, 388 P.2d 589 (1964). Defendants argue that should this court find that a valid claim exists and reverse the decision of the trial court, the decision would be "unavailing" to plaintiff since he cannot now recover in the negligence action. We are of the opinion the question of mootness is so intertwined with whether the petition states a cause of action on which relief can be granted that we decline to dismiss this appeal as moot. See *Horner v. Schinstock*, 80 Kan. 136, 101 Pac. 996 (1909).

The trial court dismissed this action based upon the authority of K.S.A. 60-212(*b*)(6), which permits dismissal when the plaintiff fails to plead a claim upon which relief can be granted.

This court's scope of review was set out in detail recently in *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, ¶¶ 1-4, 620 P.2d 837 (1980):

"When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer.

"Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.

"In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.

"The court is under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. It is not necessary that the petition spell out a legal theory for relief so long as an opponent is apprised of the facts that entitle plaintiff to relief."

As is noted earlier in this opinion, in the final analysis plaintiff's cause of action is based on an allegation of presenting perjured testimony. Prior to the first trial, plaintiff alleged that the medical report contained falsehoods, and there is nothing in the record before us to give any indication that plaintiff did not know what Lichtor was going to testify to at trial.

The overwhelming majority of authority from other jurisdictions holds that no civil cause of action for damages exists for either perjury or conspiracy to commit perjury. It is well settled that a plaintiff who has lost his case because of perjured testimony cannot sue the perjurer for damages. *Morgan v. Graham,* 228 F.2d 625, 627 (10th Cir. 1956); *Anchor Wire Corp. v. Borst,* 277 App. Div. 728, 102 N.Y.S.2d 871 (1951); 70 C.J.S., Perjury §§ 92-93. See Annot., 54 A.L.R.2d 1298, § 7. No civil action for damages lies for false testimony or for subornation of false testimony. Annot., 31 A.L.R.3d 1423, § 2[a]. Most courts reason that the remedy for perjury is criminal punishment or an action to set aside the judgment rather than a civil action for damages. See *John Allan Co. v. Brandow,* 59 Ill. App. 2d 328, 207 N.E.2d 339 (1965). In *W. G. Platts, Inc. v. Platts,* 73 Wash. 2d 434, 438 P.2d 867 (1968), the Washington Supreme Court stated:

"Perjury is, of course, a public offense and punishable in criminal proceedings,

but from earliest times the giving of false testimony has not been treated as a wrong actionable in civil proceedings. This same immunity applies to statements made preliminary to testifying.

"In 70 C.J.S. *Perjury* § 92 (1951), the rule is stated:

" 'The general rule, in the absence of statute, is that no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury, whether committed in the course of, or in connection with, a civil action or suit, a criminal prosecution or other proceeding, and whether the perjurer was a party to, or a witness in, the action or proceeding.' " p. 440.

In *Kantor v. Kessler,* 132 N.J.L. 336, 40 A.2d 607 (1945), the New Jersey Supreme Court condemned a proposed civil cause of action for perjury as being against public policy. Citing *Godette v. Gaskill,* 151 N.C. 52, 65 S.E. 612 (1909), the court said:

" 'We think there is a third reason, in that it would multiply and extend litigation if the matter could be re-examined by a new action between a party to the action and a witness therein; and, more than that, witnesses would be intimidated if their testimony is given under liability of themselves being subjected to the expense and annoyance of being sued by any party to the action to whom their testimony might not be agreeable. It would give a great leverage to litigants to intimidate witnesses.

" 'Witnesses who swear falsely are liable to indictment. It is not to be contemplated that grand juries shall willfully and oppressively find indictments; but, if a civil action lay in such cases, a litigant, smarting under the loss of his suit, could subject witnesses to the annoyance and expense of litigation at will. Such action did not lie at common law, and we have no statute authorizing it.'

"In *Stevens v. Rowe,* 59 N.H. 578; 47 Am. Rep. 231, it was said:

" 'Public policy, and the safe administration of justice, require that witnesses, who are a necessary part of the judicial machinery, be privileged against any restraint, excepting that imposed by the penalty for perjury.' " 132 N.J.L. at 337.

*Horner v. Schinstock,* 80 Kan. 136, discusses a similar situation. There, plaintiff sued the defendant, alleging that defendant had previously obtained a judgment against plaintiff by willfully giving false testimony at trial. In affirming the dismissal of plaintiff's petition, the Kansas Supreme Court said:

"It was held in *Laithe v. McDonald,* 12 Kan. 340, that where a party had obtained a judgment by wilful and corrupt perjury committed in the absence of the other party, who had exercised due diligence, the judgment should be vacated in an action brought for that purpose under section 568 of the civil code, which provides that the district courts may vacate or modify their own judgments 'for fraud practiced by the successful party in obtaining the judgment or order.' The case just referred to is cited by the plaintiff as sustaining his contention, but it does not. That was a direct attack upon the judgment to set it aside; by this action the plaintiff treats the judgment as valid, and seeks to recover damages suffered from it. Such an action can not be maintained. It is the judgment that causes the injury, and it is legally impossible that the losing party to a final adjudication

should have an action against his successful adversary to recoup in damages for what he was thus adjudged to render. A judgment, unless set aside or reversed, marks the end of the controversy, and not a mere pause in the litigation. It is possible that a miscarriage of justice may occur through perjury in securing a judgment. It is also possible that damages, if they could be awarded in a new action, might be recovered through the perjury of the other party, and so each succeeding adjudication might be reexamined in a fresh action until the parties were exhausted. It will not do to open the door to such general mischief in order to afford relief against the supposed hardships of a particular case.

"While decisions upon the precise situation are not numerous, they are persuasive. In an action commenced in New York, to recover damages because of a judgment obtained by the alleged perjury of the defendant on a trial between the same parties in Connecticut, it was said in the opinion of Mr. Justice Spencer, after stating the evils that would result from the precedent if recovery were permitted:

" *'The old rule is the safest, that the parties must come prepared at the trial to vindicate themselves, and to detect the falsity of the testimony brought against them, if it be untrue; or they must take their chance of obtaining a new trial, by showing that they were surprised, and that they have detected the imposition.'* (*Smith v. Lewis,* 3 Johns. [N. Y.] 157, 167.)" 80 Kan. at 137-38 (emphasis supplied).

Plaintiff also argues that all three defendants are liable for tortious conspiracy to perjure at trial. This cause of action has also been soundly rejected by a majority of courts. See Annot., 31 A.L.R.3d 1423, § 3, and cases cited therein. Representative of this large number of cases is *W. G. Platts, Inc. v. Platts,* 73 Wash. 2d at 438-41:

"We begin our discussion of the law of the case with a consideration of the place which the overt act occupies in the claim of damage in a civil action based on conspiracy. A text statement in 16 Am. Jur. 2d *Conspiracy* § 44 (1964) reads:

" 'The gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff. Since damage must be shown in a civil action based on a conspiracy, no cause of action can exist in the absence of an overt act.'

"Another text statement is found in 15A C.J.S. *Conspiracy* § 21, at 664 (1967):

" 'While an action may lie for damages suffered by reason of torts committed pursuant to a conspiracy, the conspiracy itself, without any actionable wrongs being done thereunder, ordinarily cannot be made the subject of a civil action, and may be of no consequence except as bearing on the rules of evidence, the persons liable, or aggravation.'

Section 5 of the same text states:

" 'Unless an overt act has been committed, there is no civil liability for conspiracy.

. . . .

" 'To create civil liability, however, there must have been an act done by one or

more of the conspirators pursuant to the scheme and in furtherance of the object.' (p. 606)

See, also, section 24 of the same text. It is unnecessary to lengthen this opinion by the citation of the innumerable decisions upon which these text statements are firmly supported.

" 'W. Prosser, Law of Torts § 43, at 260 (3d ed. 1964), states: There has been a good deal of discussion as to whether conspiracy is to be regarded as a separate tort in itself. On the one hand, it is clear that the mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime; and that some act must be committed by one of the parties in pursuance of the agreement, which is itself a tort. "The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff." It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.'

See, also, *Couie v. Local 1849, UBC,* 51 Wn. 2d 108, 316 P.2d 473 (1957).

"We are not here discussing the rule which applies in a criminal conspiracy case.

"None of the overt acts set out in the complaints are actionable. The plaintiffs expressly disclaim the right to relitigate their claim to recover the $5,000 in this action. There remains only the charges of perjury leveled at Mrs. Kennedy in the civil and criminal actions, and the charge of perjury leveled at Charles and Hazel Platts during the taking of their depositions, together with prior unsworn statements made to the prosecuting attorney as to what their testimony would be if called as witnesses and which the plaintiff claims were untrue.

"Perjury is, of course, a public offense and punishable in criminal proceedings, but from earliest times the giving of false testimony has not been treated as a wrong actionable in civil proceedings. This same immunity applies to statements made preliminary to testifying.

"In 70 C.J.S. *Perjury* § 92 (1951), the rule is stated:

" 'The general rule, in the absence of statute, is that no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury, whether committed in the course of, or in connection with, a civil action or suit, a criminal prosecution or other proceeding, and whether the perjurer was a party to, or a witness in, the action or proceeding.'

*Kantor v. Kessler,* 132 N.J.L. 336, 40 A.2d 607 (1945), contains a well-reasoned statement of the legal principles underlying the rule.

"The plaintiff claims, however, that, if the acts are committed pursuant to a conspiracy, the rule is otherwise. Such is not the law where the claimed conspiracy is to commit a wrong by means of false and perjured testimony.

"The text, 16 Am. Jur. 2d *Conspiracy* § 55 (1964), reads:

" 'A conspiracy to give or to procure the giving of false testimony is not actionable. The basis of this conclusion is that witnesses are brought into court under authority of the law and while there they are performing a public duty. A conspiracy to give or secure false testimony is an offense against the public only.' "

Kansas law, likewise, requires an actionable tort independent of the alleged conspiracy to maintain a claim. See *Knight v. Neodesha Police Dept.,* 5 Kan. App. 2d 472, Syl. ¶ 5.

Plaintiff attempts to bring himself within an exception to the general rule described in *Frist v. Gallant,* 240 F. Supp. 827 (W.D.S.C. 1965), and *Verplanck v. Van Buren et al.,* 76 N.Y. 247 (1879), that pleadings alleging more than mere perjury and encompassing fraud and deceit by false and fraudulent acts and conduct may state a cause of action since the action is not based on perjury alone. The simple answer to this challenge is that plaintiff pleaded no facts upon which such a claim may be predicated. An appellate court in reviewing a pleading for legal sufficiency need not accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened. *Knight v. Neodesha Police Dept.,* 5 Kan. App. 2d 472, Syl. ¶ 3. The only overt act set out in plaintiff's petition is that of Lichtor's alleged perjury; and without more, there is no support for the claim of general conspiracy or fraud. See *Anchor Wire Corp. v. Borst,* 277 App. Div. 728, 730, 102 N.Y.S.2d 871 (1951).

Plaintiff alleges that he has pleaded a valid cause of action either in wrongful use of civil proceedings or in abuse of process. Wrongful use of civil proceedings as defined in Restatement (Second) of Torts (1977) (see *Nelson v. Miller,* 227 Kan. 271, 607 P.2d 438 [1980]), is the civil counterpart to malicious prosecution and requires the culpable party to have been the moving force behind the wrongful civil proceeding:

"To recover for use of wrongful civil proceedings, the present plaintiff must show that the present defendant, who was the plaintiff in the alleged wrongful civil proceedings, initiated or continued the proceedings, both without having probable cause for bringing it and primarily for a purpose other than that of obtaining the proper adjudication of the claim on which the civil proceedings were brought. The meaning of probable cause is treated in § 675. The propriety of the purpose for which an action is brought is treated in § 676." (§ 674, Comment *i.*)

This clearly does not apply here where plaintiff himself brought the first lawsuit. Abuse of process is defined in Restatement (Second) of Torts § 682 (1977):

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."

Comment *a* further substantiates the rule by stating:

"The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section."

Here, no arguments were raised concerning the process in this case and the plaintiff's position on appeal is without merit.

Finally, plaintiff argues that *Rinsley v. Frydman,* 221 Kan. 297, 559 P.2d 334 (1977), states that a motion to dismiss can never be granted without first hearing the pleader's evidence. The purpose of K.S.A. 60-212(*b*)(6) is to dismiss legally insufficient pleadings even though everything they plead is taken as true. *Rinsley* merely stands for the proposition that a petition alleging libel and slander, defective for failing to meet specificity requirements, cannot be dismissed without the district court first ordering the plaintiff to plead more specific facts; and it is unrelated to this case. See *Knight v. Neodesha Police Dept.,* 5 Kan. App. 2d 472, Syl. ¶ 11. Here, plaintiff does not argue he has other facts to plead. Plaintiff's argument, if everything he alleges is taken as true, is basically that State Farm and Turner have an agreement with Lichtor that Lichtor will examine litigants and falsely testify they are not injured, or not injured to the extent they claim to be, and that Lichtor so testified falsely against plaintiff in this personal injury case. We adopt the reasoning of the majority of jurisdictions—that litigants must have access to expert opinion evidence and witnesses must be available to testify without fear of having to incur fees and expenses to defend their testimony in subsequent actions, which would do nothing more than "rehash" the same issue determined in an original case; *i.e.,* what testimony is the jury to believe? Litigation must end at some point. To permit actions such as plaintiff contemplates in this case might ultimately result in depriving the judicial system of expert witnesses who are invaluable to all segments of the bar. Most improvements in science, the law and society have resulted because some person has thought and expressed views different from the prevailing view. The advocacy system is designed to test those views, and the trier of facts decides whether to accept or

reject the opinion evidence of an expert or the testimony of a nonexpert. Here, through discovery, the plaintiff had an opportunity to learn of and expose any perjury that in his opinion defendants had committed. The courts must zealously protect the rights of *all* litigants to present their evidence within the framework of the law. If perjury is committed in a trial, a litigant is not left helpless; procedure is available to obtain a new trial. Criminal penalties are available against the perjurers and those who engage in a conspiracy to commit perjury. Disciplinary rules are available to punish lawyers who engage in such reprehensible conduct.

We conclude the trial court correctly dismissed plaintiff's petition for failure to state a cause of action.

Affirmed.