**Catherine E. ALLIN, Plaintiff,**

v.

**Tara SCHUCHMANN, Defendant.**

**Civ. A. No. 91–1431–FGT.**

United States District Court,
D. Kansas.

April 18, 1995.

Thomas M. Bradshaw, Daniel O. Herrington, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Steven P. Sanders, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, for Catherine E. Allin.

Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, W. Perry Brandt, M. Elizabeth Kirkland, Stinson, Mag & Fizzell, Kansas City, MO, Christopher M. Weil, Weil & Petrocchi, P.C., Dallas, TX, for Tara Schuchmann.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Plaintiff has brought this action alleging malicious prosecution and intentional infliction of emotional distress. The matter is before the court on defendant's motion for summary judgment. (Doc. 86). The motion has been extensively briefed, and the court is prepared to rule.

### 1. Facts

This case arises out of a criminal fraud action brought against officers of Peoples Heritage Savings and Loan Association ("Peoples") in Salina, Kansas, and others alleged to have conspired with those officers to

commit the fraud. Among the defendants charged in that case were plaintiff, Catherine Allin, and her then husband, James Cruce,[1] who was the president of and a principal shareholder in Peoples. James Cruce pled guilty to several charges and was sentenced to a term of imprisonment. Plaintiff went to trial and was acquitted.

Tara Schuchmann, a Texas stockbroker, was subpoenaed to testify before the grand jury regarding stock transactions she had conducted for a Drexel, Burnham, Lambert ("Drexel") account held in the name of Catherine Allin. The transactions involved purchases and resales of shares of Ameriwest Financial Corporation ("Ameriwest"). One purchase, made in December 1987, involved over $1 million in Ameriwest stock. Another, involving over $800,000 in Ameriwest stock, was paid for partly in cash and partly by a margin loan from Drexel. Schuchmann testified that all the transactions were made at Allin's direction and that she had discussed with Allin the nature of the transactions, as well as Allin's financial status and investment objectives. Schuchmann testified that she believed Allin to have a net worth of approximately $1.5 million and an annual income of $75,000 and that Allin had told Schuchmann she wanted to speculate in the stock market and was willing to take risks. Schuchmann testified that based on her dealings with Allin, the large stock transactions did not concern her.

Nothing about the stock transactions themselves, as Schuchmann related them, was illegal. However, the government had information that the funds used for the stock transactions were acquired through the fraud against Peoples, and Schuchmann's testimony supplied a critical link in the chain of circumstantial evidence tying Allin to the fraud. Without Schuchmann's testimony, there would have been no evidence presented that Allin knew about or participated in the fraud. There is no evidence that Schuchmann knew about the fraud against Peoples.

Schuchmann was again subpoenaed to testify at trial, where her testimony was the same as her grand jury testimony. The Assistant United States Attorney spoke with Schuchmann immediately before her testimony and had several contacts with Schuchmann's attorney. As stated above, Allin was acquitted of all criminal charges.

According to plaintiff, Schuchmann's testimony before the grand jury and at trial was false and misleading, and she withheld exculpatory information from the prosecutor. Plaintiff contends that at the time of the transactions her net worth was approximately $750,000, and that she never told Schuchmann otherwise. At the time of the transactions, plaintiff was a full-time student working part time as an interior designer and had an annual income of $29,000. Plaintiff denies discussing her investment strategy or objectives with the defendant. Plaintiff contends that it was James Cruce, and not plaintiff, who opened the Drexel account and conducted the stock transactions through Schuchmann and that plaintiff neither authorized nor knew about those transactions. Plaintiff contends further that without the testimony of Schuchmann, no criminal charges would have been brought against plaintiff.

Allin argues that Schuchmann got involved with Cruce's dealings because he had given her a great deal of business and in exchange for his arranging for Schuchmann and her husband to purchase a home at a greatly reduced price through circumvention of banking regulations. Plaintiff contends that Schuchmann gave false testimony in order to protect herself from liability under the securities regulations and to eliminate any suggestion that Schuchmann was involved in the fraud against Peoples. Allin does not contend that Schuchmann was motivated by any particular ill will toward her.

Allin instituted a National Association of Securities Dealers arbitration proceeding, alleging fraud, breach of contract and breach of fiduciary duty against Schuchmann. In the arbitration, Allin alleged that Schuchmann, without plaintiff's permission, transferred some $234,000 from Allin's account into a bank account held by Cruce. The arbitration panel found in favor of Allin and awarded $10, but did not award costs to either party. There was evidence before the

1. Cruce and Allin were married in September 1989. They have since been divorced.

arbitration panel that the money taken from Allin's account did not belong to her. The United States District Court for the Northern District of Texas confirmed the award. *Cruce v. Schuchmann,* 3:93–CV–0768–H (N.D.Tex. May 18, 1993).

### 2. Summary Judgment Standard

■ The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial in that the court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

### 3. Malicious Prosecution

Plaintiff alleges that defendant is liable for malicious prosecution because she gave false and misleading testimony to the grand jury and at trial and because she withheld exculpatory evidence while testifying and while talking to the prosecutor before her testimony. Defendant contends that these actions are insufficient to give rise to liability.

■ Kansas law recognizes a cause of action for malicious prosecution arising out of a criminal proceeding. To maintain such an action, the plaintiff must prove: (1) that the defendant instituted, procured or continued the criminal proceeding of which the complaint is made, (2) that the defendant in so doing acted without probable cause and with malice, (3) that the proceeding terminated in favor of the plaintiff, and (4) that the plaintiff sustained damages. *Braun v. Pepper,* 224 Kan. 56, 58, 578 P.2d 695 (1978); *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, Syl. ¶ 5, 468 P.2d 269 (1970). In interpreting the elements of malicious prosecution, the court keeps in mind that the cause of action has long been disfavored. *See, e.g., Meyers v. Ideal Basic Indus., Inc.,* 940 F.2d 1379 (10th Cir.1991), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992) (applying Oklahoma law); *Purvis v. Hamwi,* 828 F.Supp. 1479, 1482 (D.Colo.1993); *Whittaker v. Duke,* 473 F.Supp. 908, 912 (1979); *see also* W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 119, at 876 (5th ed.1984).

■ Defendant's motion for summary judgment brings into issue only the first element. It is widely held that to institute,

procure, or continue a prosecution requires more than testifying as a prosecution witness. "One who merely responds to requests for information or who testifies as a witness does not, by those acts, institute or continue a proceeding." *Whittaker v. Duke*, 473 F.Supp. at 910. Liability may result if the defendant testifies in addition to other action, such as investigating the alleged crime, *Crow v. United States*, 634 F.Supp. 1085, 1093 (D.Kan.1986), offering to pay some of the cost of prosecution, *Weathers v. American Family Mut. Ins. Co.*, 793 F.Supp. 1002, 1020 (D.Kan.1992), or going to the authorities with information known to be false when there is no request for such information and no ongoing investigation. *See Wright v. Montgomery Ward & Co., Inc.*, 814 F.Supp. 986 (D.Kan.1993), *aff'd*, 25 F.3d 1059 (10th Cir. 1994); Restatement (Second) of Torts § 653 cmt. g (1976). However,

> "It is not enough that [the defendant] appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution."

Restatement (Second) of Torts § 655 cmt. c. A defendant is not liable for appearing as a witness "even though the testimony may be perjured because the necessities of a free trial demand that witnesses are not deterred by fear of tort suits . . . ." Prosser & Keeton on the Law of Torts § 119, at 872. Furthermore, to permit malicious prosecution actions against prosecution witnesses would give those witnesses an interest in the outcome of the case since only a conviction would provide them immunity from suit. *Whittaker*, 473 F.Supp. at 912.

▮▮▮ The court rejects plaintiff's argument that this defendant should be held liable because she provided the only evidence that plaintiff knew about and participated in the fraud. As the court stated in *Whittaker*, neither case law nor policy provides a reason to distinguish between vital witnesses and those whose testimony is cumulative or tangential. *Id.* at 912.

▮▮▮ The plaintiff next argues that even if merely answering questions as a subpoenaed witness cannot constitute malicious prosecution, the defendant in this case did more than answer questions under oath. Plaintiff argues that the defendant actively assisted the prosecution by volunteering information in that she did not answer questions directly, by withholding truthful information, and by talking to the prosecutor outside the courtroom. The court disagrees. To hold that any of or all of this conduct is active participation would swallow the rule that there is generally no malicious prosecution liability for prosecution witnesses. Speaking to the prosecutor before testifying is a normal part of appearing as a prosecution witness. In this case, the prosecutor spoke with defendant briefly before she testified each time and had contacts with defendant's attorney. As for plaintiff's contention that defendant failed to give direct answers to some questions, the court has never seen a witness answer every question in the way the lawyers would like. This is particularly true on cross examination. The court rejects the notion that a witness can slip into the category of active participant merely by clarifying a previous answer, veering off course in her testimony, or answering a yes/no question with a complete sentence. Finally, withholding truthful information is an inherent part of giving false information[2] and cannot be considered "active participation."

### 4. Intentional Infliction of Emotional Distress

Defendant seeks summary judgment on plaintiff's claim for intentional infliction of emotional distress, arguing that her conduct was not so extreme and outrageous as to permit recovery and that there is no evidence that plaintiff suffered severe emotional distress.

---

**2.** For example, plaintiff argues that the defendant actively participated in the criminal case because defendant not only testified falsely that plaintiff authorized the stock transactions, but also failed to testify that plaintiff did not authorize those transactions. Plaintiff attempts to double-count each alleged misrepresentation in this manner.

Kansas law recognizes the cause of action for intentional infliction of emotional distress, also known as the tort of outrage. The cause of action requires proof of the following:

> (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's emotional distress; and (4) plaintiff's emotional distress must be extreme and severe.

*Anspach v. Tomkins Industries, Inc.*, 817 F.Supp. 1499, 1506 (D.Kan.1993), *aff'd*, 51 F.3d 285 (10th Cir.1995) (quoting *Roberts v. Saylor*, 230 Kan. 289, 292–93, 637 P.2d 1175 (1981)).

There are two threshold requirements for the court to determine as a matter of law:

> (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

*Id.* If reasonable people could differ as to whether the requirements are met, the matter is to be determined by the jury. *Taiwo v. Vu*, 249 Kan. 585, Syl. ¶ 3, 822 P.2d 1024 (1991). Under the first threshold requirement, liability may be found only in those cases in which the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and intolerable in a civilized society. *Roberts v. Saylor*, 230 Kan. at 293, 637 P.2d 1175. Liability does not arise "from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities." *Id.*

The second threshold requirement is that the plaintiff's emotional distress must be sufficiently severe, genuine and extreme that no reasonable person should be expected to endure it. *Id.* at 293–94, 637 P.2d 1175. The required threshold is necessarily high to separate meritorious claims from those based on trivialities or hyperbole. *Rupp v. Purolator Courier Corp.*, 790 F.Supp. 1069, 1073 (D.Kan.1992).

In this case, the defendant argues that neither threshold requirement is met. The defendant argues first that the conduct plaintiff alleges, giving false and misleading testimony in a criminal trial, is not "extreme and outrageous." The court agrees that such conduct, while certainly not to be condoned, does not, on its own, give rise to liability for intentional infliction of emotional distress. There are many types of conduct which are not sanctioned by society, but which do not constitute extreme and outrageous behavior. *See Crow v. United States*, 659 F.Supp. 556, 576 (D.Kan.1987) (listing types of conduct held not extreme and outrageous). When combined with other conduct, giving false information to law enforcement can give rise to liability. In *Taiwo*, 249 Kan. at 587, 593, 822 P.2d 1024, the Kansas Supreme Court affirmed a finding of outrage where the defendant had withheld wages due to the plaintiff, assaulted, battered and falsely imprisoned the plaintiff, filed a false police report accusing plaintiff's husband of a crime, lied to police officers, and induced another employee to lie to law enforcement. In this case, however, the only conduct upon which plaintiff has based her claim is the act of testifying,[3] which the court holds insufficient to support her claim.

The court's decision is based in part on the rule in Kansas, as in most states, that there is no civil cause of action for perjury or conspiracy to commit perjury. *Hokanson v.*

---

**3.** Plaintiff does cite *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152 (10th Cir.1981), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983), a case in which the Tenth Circuit affirmed a verdict finding intentional infliction of emotional distress on the basis that the defendant had conducted repeated unauthorized stock transactions in the plaintiff's name, thereby losing most of plaintiff's life savings. Plaintiff's reliance on *Malandris* is misplaced. Most importantly, in this case, the complaint and the pretrial order set forth the alleged outrageous conduct as defendant's false and misleading testimony. The plaintiff has not sought to recover for emotional distress based on the transactions themselves. Furthermore, the allegedly unauthorized transactions in this case cost plaintiff no money.

*Lichtor*, 5 Kan.App.2d 802, 805–809, 626 P.2d 214 (1981). It is widely believed that the criminal penalty for perjury is an adequate deterrent. *Id.* at 805, 626 P.2d 214. The rule also furthers the important policy that witnesses must be available to testify without fear of being subjected to further litigation. *Id.* at 810, 626 P.2d 214. Although *Hokanson* dealt with expert witness testimony in a civil case, the policy is at least as strong in criminal cases because public policy encourages prosecution of criminals, and citizens should be allowed to cooperate in the prosecution of crimes without fear of a civil suit for damages. *Purvis*, 828 F.Supp. at 1482 (malicious prosecution claim). If the court extended the cause of action for intentional infliction of emotional distress, or malicious prosecution for that matter, to include liability for witnesses who testify falsely in criminal trials, the rule against civil actions for perjury would be meaningless. *See Tufts v. Madesco Investment Corp.*, 524 F.Supp. 484, 486 (E.D.Mo.1981).

The court also concludes that the plaintiff has not met her burden of setting forth evidence that she has suffered severe emotional distress. Although plaintiff has submitted an affidavit alleging that she has suffered extreme humiliation, embarrassment, anxiety, anguish and distress, this is a mere allegation, which is insufficient to overcome a motion for summary judgment. Fed. R.Civ.P. 56(e). There is no evidence that she has sought medical or psychiatric treatment,[4] nor that her distress has affected her daily life. As Judge O'Connor stated in *Crow*, "While the court can certainly conceive that a person falsely charged with a crime and forced to stand trial might suffer extreme distress, trauma and humiliation, there is simply no evidence of it occurring here." *Crow*, 659 F.Supp. at 576 (finding for defendant upon trial to court). *See also Caplinger v. Carter*, 9 Kan.App.2d 287, 292, 676 P.2d 1300 (1984) (plaintiff claiming excessive force did not meet threshold for extreme and severe emotional distress where no evidence of treatment, no professional witness testimony,

and plaintiff alleged "total shock" and fear of police officers). *But see Weathers*, 793 F.Supp. at 1019 (outrage claim submitted to jury where plaintiff presented witnesses who had observed plaintiff's distress and accompanying physical problems and testimony of psychiatrist and psychologist).

### 5. Conclusion

For the foregoing reasons, the court concludes that the defendant is entitled to summary judgment. Because summary judgment is appropriate in this case, there is no need to address plaintiff's collateral estoppel argument.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 86) is hereby granted.

---

**4.** The court has examined the pretrial order, and plaintiff has not listed any expert witnesses to testify as to her emotional/mental condition.