**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 8 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOSEPH P. AMRO,

      Plaintiff - Appellant,

v.

THE BOEING COMPANY,

      Defendant - Appellee.

No. 97-3049
(D.C. No. 96-2147-KHV)
(District of Kansas)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRISCOE** , **McWILLIAMS** and **LUCERO** , Circuit Judges.

Joseph Amro, who is of Lebanese ancestry, brought suit against his employer, Boeing, alleging discrimination and retaliation. The district court granted summary judgment in favor of Boeing on all of Amro's claims. Amro appeals the dismissal of his claims of discrimination on the basis of national origin in violation of 42 U.S.C. § 1981, discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

retaliation in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

Because we are reviewing a grant of summary judgment, we view the

evidence in the light most favorable to plaintiff as nonmoving party and draw all

reasonable inferences from the evidence in his favor. See Kaul v. Stephan, 83

F.3d 1208, 1212 (10th Cir. 1996). We will, however, only consider those facts

properly presented to the district court.[1]

---

[1] The district court chastised plaintiff for repeated noncompliance with local district court rules, which require that a memorandum in opposition to summary judgment contain "a concise statement of material facts . . . [which] shall be numbered . . . [and] shall refer with particularity to those portions of the record upon which the opposing party relies." Amro v. Boeing Co., No. 96-2147-KHV, slip op. at 3 (D. Kan. Jan. 7, 1997) (quoting D. Kan. R. 56.1). The trial court considered only those facts that plaintiff properly cited in compliance with this rule. A district court is afforded discretion in applying its local rules, see Hernandez v. George, 793 F.2d 264, 269 (10th Cir. 1986), and we see no abuse of discretion in the district court's decision to exclude material submitted in violation of a local rule of this type, cf. Downes v. Beach, 587 F.2d 469, 471 (10th Cir. 1978) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.").

By the same token, "in the absence of . . . specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to the jury. Such an appellate supplementation of the nonmovant's presentation would not be fair to either the movant or the district court." Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024-25 (10th Cir. 1992).

**A**

Plaintiff, an engineer, was hired by Boeing in 1984. Over the next decade, he received a number of salary increases and promotions. Salary increases at Boeing were based on a computation that combined the employee's years of experience and evaluations by supervisors. During his tenure at Boeing, plaintiff received "good," "satisfactory," or "outstanding" evaluations. While employed by Boeing, plaintiff obtained masters and Ph.D. degrees in mechanical engineering, and, pursuant to company policy, was reimbursed by Boeing for tuition and book costs.

After an on-the-job injury in April 1993, plaintiff took an approved medical leave of absence until October 29, 1993. Shortly thereafter, he met with Boeing management to discuss his concern that his "BS equivalent years," a relevant variable for determining his pay, were incorrectly entered into Boeing's computer system. Beginning in May 1994, plaintiff worked for Terry Nunemaker, who created a special position on a short-term project to accommodate plaintiff's medical restrictions.

On June 29, 1994, plaintiff took another medical leave of absence, returning in November 1994. Added to his previous medical restrictions was use of a computer screen for no more than 50% of his shift. Although plaintiff sought reinstatement to his position with Nunemaker, he was unsuccessful; according to

Boeing, the position was no longer available. Since his return to Boeing, plaintiff has retained his prior status of senior engineer—at least by salary and job description. Furthermore, his salary has increased. But, plaintiff has also adduced sufficient evidence to permit an inference that his responsibilities have been reduced to those of a drafter, not an engineer.

**B**

Plaintiff began complaining to his superiors about discriminatory treatment no later than March 1994. In a letter that month, plaintiff complained to Boeing's EEO manager that the company discriminated against him on the basis of national origin and disability by denying him merit increases and job assignments commensurate with his experience and education. Boeing claims it never received this letter.

Two months later, plaintiff filed a complaint of discrimination with the Kansas Human Rights Commission, alleging that he was denied a wage increase on March 21, 1994, and a promotion on April 10, 1994, because of his disability and national origin. Shortly thereafter, he sent additional letters to Boeing management complaining of discrimination.

In October 1995, plaintiff filed a charge of retaliation with the Kansas Human Rights Commission claiming that from December 23, 1994 to March 15, 1995, he was assigned to drafting instead of engineering while "employees who

-4-

have not filed a complaint were not forced to move out of their current department to work in another department," and that on or about April 12, 1995, he was denied a reassignment requested by a supervisor. Plaintiff filed this federal complaint on March 29, 1996.

## II

Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury." Williams v. Rice, 983 F.2d 177, 179 (10th Cir. 1993). In other words, "the non-moving party must 'make a showing sufficient to establish an inference of the existence of each element essential to the case.'" Aramburu v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997) (quoting Bolden v. PRC Inc., 43 F.3d 545, 548 (10th Cir. 1994)).

### A. § 1981 Claims

Amro contends that he was denied promotions and salary increases because of his Lebanese ancestry. [2] Because plaintiff relies on indirect evidence to

---

[2] Plaintiff only appeals the dismissal of his claim of "national origin" discrimination under § 1981. See Appellant's Br. at 1-2. Because that statute
                                                                                    (continued...)

demonstrate Boeing's discriminatory intent, we apply the burden-shifting

framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05

(1973).[3] The first step of the McDonnell Douglas order of proof places the

burden on plaintiff to establish a prima facie case of discrimination. See

Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995).

To carry that burden on his denial of promotion claim, plaintiff must show

that (1) he belongs to a protected class; (2) he was qualified for the promotion;

(3) he was denied this promotion; and (4) the position remained open or was filled

from outside the protected class. See id. at 1534. Plaintiff has presented no

---

[2](...continued)
does not protect against discrimination based on national origin, we consider his claims of discrimination based on his Lebanese ancestry to fall within § 1981's protection against racial discrimination. See Aramburu, 112 F.3d at 1411 n.10.

[3] Plaintiff argues that the record also contains direct evidence of discrimination, in the form of references in his evaluations to his communication skills, which he interprets as comments about his accent. We construe comments about foreign accent to constitute indirect evidence of national origin discrimination. See Carino v. Univ. of Okla. Bd. of Regents, 750 F.2d 815, 819 (10th Cir. 1985). We need not decide whether such comments can also constitute indirect evidence of race discrimination because we hold that even considering this evidence, plaintiff has failed to make out a prima facie case of discriminatory treatment under § 1981.
Plaintiff also argues that a supervisor suggested to him that discrimination might be the cause of his salary and position. As far as we can tell, however, this argument was not presented to the district court in response to the summary judgment motion. Therefore, we do not consider it further. See Tele-Communications, Inc. v. Commissioner, 104 F.3d 1229, 1232-33 (10th Cir. 1997) ("Propounding new arguments on appeal in an attempt to prompt us to reverse [a grant of summary judgment] undermines important judicial values.")

-6-

evidence showing that others outside the protected class received any promotions denied to him or that he was eligible to be promoted to any positions that remain unfilled.

With respect to his claim of discriminatory compensation, plaintiff may establish a prima facie case by showing that a co-worker outside the protected class performing similar work was compensated at a higher rate. See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1363 (10th Cir. 1997). We agree with the district court that plaintiff has presented no evidence that any of the engineers in his job code who were paid more than he are non-Lebanese. Absent some evidence in the record, we cannot assume the race or ethnicity of his co-workers.[4]

Apparently recognizing this failure of proof, plaintiff seeks to supplement the evidence he presented to the district court with an affidavit by another manager stating that plaintiff "was by no means in the lower half" of those that the manager evaluated. See Motion to Make Corrections and To Supplement Appellant's Reply Br. Plaintiff gives no explanation as to why this information

---

[4]     There is a two-year statute of limitations for claims of discrimination pursuant to 42 U.S.C. § 1981.     See Garcia v. University of Kansas    , 702 F.2d 849, 851 (10th Cir. 1983). Therefore, plaintiff's claims for discriminatory actions which occurred prior to March 29, 1994, are barred. Further, plaintiff may not avoid the statute of limitations by employing the continuing violations doctrine because the doctrine is not available to a plaintiff who brings a § 1981 action. See Thomas v. Denny's, Inc.   , 111 F.3d 1506, 1513-14 (10th Cir.),     cert. denied , 118 S. Ct. 629 (1997).

could not have been obtained for inclusion in the voluminous record presented to the trial court, and we therefore do not consider such evidence on appeal. See John Hancock Mut. Life Ins. Co. v. Weisman, 27 F.3d 500, 506 (10th Cir. 1994).

As to plaintiff's claims that he suffered discrimination as a result of Boeing's failure to reward him for his educational achievements, he fails to challenge Boeing's assertion that it does not reward post-graduate degrees with pay raises or promotions and so he raises no inference of impermissible animus on this point either.

Plaintiff also asserts that his reassignment to a different position upon his return from his second medical leave constitutes discrimination. The trial court construed this claim as one for discriminatorily refusing to hire because plaintiff was not in a position at Boeing at the time of the alleged discrimination, but rather was reassigned subsequent to a leave of absence. Although we think the claim is better viewed as one of discriminatory demotion because the essence of plaintiff's grievance is that his responsibilities were downgraded, we agree that plaintiff has failed to establish an inference of discrimination. To establish a prima facie case, Amro must show that he has been replaced in the position at issue by someone outside the protected class or that the position remains open. See Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir. 1993), abrogated on other grounds by Buchanan v. Sherrill, 51 F.3d 227, 229

(10th Cir. 1995). He has presented no evidence controverting Boeing's assertion that the short-term position in question has been eliminated. We think it also fair to construe plaintiff's claim as one for demotion in the context of a reduction-in-force. See Beaird v. Seagate Tech., Inc., Nos. 96-6087, 96-6145, 1998 WL 271563, at * 7 (10th Cir. May 28, 1998). In order to establish a prima facie case for such a claim, Amro must show that positions similar to his position with Nunemaker were not eliminated and were retained by people outside the protected class. See id. Again, he has made no such showing.

## B. ADA Claim

The trial court held that plaintiff did not administratively exhaust his disability claims related to the December 1994 reassignment and that plaintiff did not state a prima facie case for disability discrimination based on that reassignment. We need not consider whether this claim was administratively exhausted because we agree plaintiff has failed to state a prima facie case of discrimination.

To assert a prima facie case of disability discrimination, plaintiff must demonstrate that (1) he is disabled; (2) he could perform the essential functions of an available job with or without reasonable accommodation; (3) an adverse employment action occurred; and (4) that action raises an inference of unlawful discrimination because of his disability. Cf. White v. York Int'l Corp., 45 F.3d

-9-

357, 360-61 (10th Cir. 1995) (describing analogous showing for discriminatory termination claim).  Again, we hold that plaintiff has not borne his initial burden of stating a prima facie case for discrimination under the ADA.  Amro can raise no inference that discrimination    caused his reassignment.  There is neither a suggestion that the previous position remains open or that it was filled by an individual who was not disabled, nor evidence that while this position was eliminated, a similar position, filled by someone who was not disabled, was retained.

## C.  Retaliation

In order to establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in protected activity; (2) adverse employment action was taken against him contemporaneously to or subsequent to that protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action.    See Murray v. City of Sapulpa   , 45 F.3d 1417, 1420 (10th Cir. 1995).  "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).

Even were we to disagree with the district court that plaintiff failed to meet this burden, we would still affirm summary judgment.  Defendant has presented

evidence that plaintiff was not returned to the position he held prior to his second medical leave because that position no longer existed. Plaintiff has not adduced evidence to challenge this explanation. Because plaintiff has not raised an inference to rebut this evidence of a non-retaliatory reason for his transfer, his retaliation claim cannot stand. See Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395-96 (10th Cir. 1997).

## III

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment on all claims. Appellant's Motion to Make Corrections and to Supplement Appellant's Reply Brief is DENIED. Appellee's motion for sanctions is DENIED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge