Sondra L. GLOVER, Plaintiff,

v.

HEART OF AMERICA MANAGEMENT COMPANY, Iowa Machine Shed Company, Kansas Cooking, Inc., Tom Lehmann, Defendant.

No. 98–2125–KHV.

United States District Court, D. Kansas.

Jan. 12, 1999.

Rachelle M. Eichenwald, Overland Park, KS, David M. Bryan, Overland Park, KS, for Plaintiff.

Justin J. Johl, Kevin J. Karpin, Margann M. Bennett, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion For Summary Judgment Of All Defendants Except Tom Lehmann* (Doc. # 99) which Heart of America Management, Iowa Machine Shed Company, and Kansas Cooking, Inc. filed November 16, 1998 and plaintiff's *Motion To Amend*

*And Include Claim For Punitive Damages* (Doc. # 78) filed October 28, 1998. For the reasons stated below, defendants' motion is sustained in part and denied in part. Plaintiff's motion is denied.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## Undisputed Facts

Defendants argue that the Court should disregard many of plaintiff's factual allegations because she has failed to comply with Fed.R.Civ.P. 56 and D.Kan.Rule 56.1. The Court uses its discretion in its application of the local rules. *See Amro v. Boeing Co.,* 153 F.3d 726, 1998 WL 380510 (10th Cir.1998) (Table, text available on Westlaw at 1998 WL 380510). Plaintiff only makes one factual allegation in her statement of facts, but she provides numerous factual allegations in the argument section of her brief. While the Court does not look with favor on plaintiff's failure to comply with D.Kan.Rule 56.1, she does cite record evidence for most of the factual allegations in the argument section of her brief. Plaintiff has not failed to support her factual allegations; she simply has failed to place these factual allegations in her statement of facts. The Court finds that plaintiff's failure has not prejudiced defendants or prevented the Court from ascertaining plaintiff's relevant factual allegations. The Court therefore accepts plaintiff's properly-supported allegations, despite her failure to comply with D.Kan. Rule 56.1.[1]

---

1. D.Kan.Rule 56.1 provides in relevant part as follows:

The following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff:

From May 12 to September 8, 1997, plaintiff worked at the Kansas Machine Shed Restaurant in Olathe, Kansas. Plaintiff alleges that Tom Lehmann, a co-worker who lacked supervisory authority over plaintiff, began harassing her on May 14, 1997, her third day on the job. Over the course of plaintiff's employment, Lehmann asked plaintiff if she "liked it up the butt" and whether her crotch was "soft and wet," and told her that he "liked it bald" while referring to her crotch. Lehmann dressed down to his underwear and stated to plaintiff, "I'll show you mine if you show me yours." Lehmann told plaintiff that he would give her money to see her naked and if she "sucked [him] right now." Lehmann asked plaintiff the color of her undergarments, attempted to guess the color, and on a few occasions correctly did so. Lehmann told another employee that he was able to spy into the restroom. Lehmann told plaintiff that he masturbated while thinking of her. He baked two loaves of bread in the shape of breasts and used them to tease plaintiff. Lehmann pulled plaintiff's hair on over ten occasions and stated, "I bet you look good on your knees." Despite plaintiff's allegations of hair-pulling, she never yelled for help, struck at Lehmann, sought a restraining order against Lehmann, or saw a doctor.

On numerous occasions plaintiff told Brian Fink, her immediate supervisor, about Lehmann's hair pulling. Plaintiff alleges that she complained to management on each day that any alleged inappropriate conduct occurred. Fink referred to plaintiff as "Mrs. Lehmann" on more than one occasion, and he attempted to set up plaintiff on a date with Lehmann. After plaintiff refused, Fink gave plaintiff a poor evaluation. Plaintiff threatened to discuss Lehmann's conduct with Fink's superior, Chris Bernat, who was chief operating executive at the restaurant. In response, Fink placed his hand on plaintiff's shoulder and stated, "You will not go to Chris Bernat. Tom could lose his, job." Plaintiff felt threatened by this incident.

On August 15, 1997, plaintiff first contacted her attorney by telephone. On the same day, defendants became aware that plaintiff was in contact with an attorney. Bernat met with plaintiff to discuss her allegations of sexual harassment. After that discussion, Lehmann stopped harassing plaintiff. On August 16, 1997, plaintiff first met in person with her attorney. Plaintiff alleges that defendants retaliated against her after they learned of her telephone conversation and her plans to meet in person with an attorney.

Plaintiff worked the following hours during her weeks of employment at the restaurant:

May 12–15, 1997–4 days, 31.24 hours total, 7.81 hours per day worked;

May 16–31, 1997–10 days, 83.73 hours total, 8.37 hours per day worked;

June 1–15, 1997–12 days, 91.09 hours total, 7.59 hours per day worked;

The memorandum or brief in support of a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.

A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party. The statements required by this subsection shall be in addition to the material otherwise required by these rules and the Federal Rules of Civil Procedure.

June 16–30, 1997–10 days, 75.95 hours total, 7.59 hours per day worked;

July 1–15, 1997–10 days; 78.90 hours total, 7.89 hours per day worked;

July 16–31, 1997–14 days, 110.96 hours total, 7.92 hours per day worked;

August 1–15, 1997–12 days, 105.44 hours total, 8.78 hours per day worked;

August 16–31, 1997–8 days, 53.18 hours total, 6.64 hours per day worked;

September 1–8, 1997–6 days, 30.56 hours total, 6.59 hours per day worked.

From August 16 through 31, defendants did not schedule plaintiff to work on three days, and plaintiff failed to report on five days because she was sick. From September 1 through 8, plaintiff did not report to work two days because she was sick.[2] Plaintiff left her employment at the restaurant on September 8. She now works as a letter carrier for the U.S. Postal Service.

Plaintiff alleges that as a result of Lehmann's sexual harassment, she cannot get close to people, trust people, or touch her children or anything intimate. She is afraid to go outside her home and clams up in sexual situations. Plaintiff also alleges that she continues to suffer headaches from Lehmann's hair pulling. Plaintiff has not consulted a physician or sought professional help regarding her emotional distress or headaches. Plaintiff and her former husband sought counseling from a clergy member. Plaintiff has used over-the-counter medications for her headaches. Plaintiff's health insurance benefits would cover X-rays or other treatment for her headaches.[3]

All of the relevant events occurred at the Kansas Machine Shed Restaurant in Olathe, Kansas. Kansas Cooking, Inc. ("KCI") owns and operates the restaurant. The corporate defendants own and operate a total of 12 restaurants and hotels under the umbrella name Heart of America Restaurants and Inns. Iowa Machine Shed Company ("IMS") owns and operates eight restaurants and hotels under this umbrella. All employees who work at restaurants and hotels under .the Heart of America umbrella follow the same policies and procedures, as set forth in an information packet labeled "Heart of America Restaurants and Inns Staff Member Information Packet." The packet states that Mike Whalen is president and owner of the entire Heart of America "company," and lists IMS-owned restaurants as part of this "company." The packet includes a sexual harassment policy that covers the entire "company" and all employees of the "company." The restaurants and hotels under the Heart of America umbrella transfer employees and merchandise from one restaurant or inn to another and purchase inventory from the corporate office.

All corporate defendants share the same corporate office and telephone number. The sign outside of the corporate office reads "Heart of America Restaurants and Inns," and employees at the corporate office answer the telephone by stating "Heart of America." Kirk Whalen serves as general counsel for Heart of America Management ("HOAM"), KCI, IMS, and other entities, but only HOAM pays his

**2.** Plaintiff controverts much of defendants' evidence regarding her work history by alleging a lack of personal knowledge and asserting that defendants have not provided plaintiff's personnel record. Defendants have provided plaintiff personnel records which show the dates when plaintiff worked. In addition, defendants have provided an affidavit by Bernat that explains why plaintiff did not work on some dates. The affidavit states that Bernat has personal knowledge of the facts stated. In these circumstances, plaintiff cannot create a genuine issue of material fact by alleging lack of personal knowledge whether she missed work due to illness. "in a response to a motion for summary judgment, a party cannot rest on ignorance of facts." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). The Court therefore accepts this portion of defendants' allegations as uncontroverted.

**3.** Defendants allege that plaintiff's health insurance would also cover treatment of her emotional distress, but they fail to cite any evidence that supports this allegation. The evidence they cite only discusses treatment for plaintiff's headaches.

salary. Michael Whalen owns 100 percent of the stock in IMS, KCI, and HOAM. IMS and KCI each contract with HOAM to provide management services at the restaurants and hotels owned by IMS and KCI. All managers at Heart of America restaurants and hotels are therefore employees of HOAM.

## Analysis

### A. Retaliation

■ Defendants first argue that plaintiff has failed to state a claim for retaliation based on her allegation that defendants cut her work hours after learning that she planned to consult an attorney.[4] In analyzing plaintiff's retaliation claims the Court applies the *McDonnell Douglas* shifting burden of proof scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this standard, if plaintiff establishes a prima facie case of retaliation, the burden shifts to defendants to offer a legitimate reason for the adverse action. Once defendants offer such a reason, the burden shifts back to plaintiff to show a genuine dispute of material fact as to whether defendants' proffered reason for the challenged action is pretextual. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir.1997); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir.1988). To establish a prima facie case of retaliation under Title VII, plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) she was disadvantaged by an action of her employer subsequent to or contemporaneously with such opposition; and (3) a causal connection exists between the protected activity and the adverse employment action. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993); *Dunbar v. Board of Directors of Leavenworth Public Library* 996 F.Supp. 1086, 1092 (D.Kan.1998); *Amro v. Boeing Co.*, 951 F.Supp. 1533, 1555 (D.Kan.1997). The requisite causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir.1982); *Manning v. Marketing Communications, Inc.*, 1998 WL 596723 (D.Kan.1998).

■ If plaintiff establishes a prima facie case, the burden of production shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse action. *Burrus*, 683 F.2d at 343. Defendants need not prove the absence of retaliatory motive, but only produce evidence to dispel the inference of retaliation by establishing the existence of a legitimate reason. *Id.* Once defendants produce a nondiscriminatory reason for the challenged action, the presumption of retaliatory intent raised by the prima facie case drops out of the picture, and the burden of persuasion falls back to plaintiff to prove that defendants acted with a retaliatory intent. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Rosas v. IBP, Inc.*, 869 F.Supp. 912, 916 (D.Kan.1994).

The undisputed facts establish that plaintiff worked significantly fewer hours after defendants learned that plaintiff had a telephone conversation with an attorney and made plans to meet the attorney in person. Defendants argue that plaintiff missed many days of work due to illness and that any reduction in hours was not due to defendants' failure to schedule her but due to plaintiff herself. This argument, however, misses the point. The relevant question is how many *hours* plaintiff worked, not how many *days* plaintiff worked. While plaintiff may be responsible for missing some days of work, the evidence shows that during the pay periods for August 16 through 31 and September 1 through 8, plaintiff worked signifi-

---

**4.** Defendants do not address plaintiff's claim that their failure to give her a promised pay raise was also retaliatory.

cantly fewer hours than she previously had worked. Even if the Court were to eliminate the days when plaintiff did not work (regardless who was responsible), the evidence shows that plaintiff worked an average of 6.64 hours per day from August 16 through 31 and 6.59 hours per day from September 1 through 8.[5] Such evidence shows a definite reduction in plaintiff's hours because she previously averaged no less than 7.59 to 8.78 hours per day worked.

■ Given the remedial nature of Title VII, the law in this circuit liberally defines adverse employment action. *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996). The Court finds that a reduction of approximately one hour per day constitutes adverse employment action. In addition, the proximity of this action with plaintiff's conversation with her attorney on August 15 and meeting with him on August 16 creates a sufficient inference of a causal connection. *See Burrus v. United Tel. Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.1982). Defendants do not argue that plaintiff fails to meet any other elements of her prima facie case, and the Court finds that she has made a prima facie showing of retaliation regarding a cut in her work hours.

The burden therefore shifts to defendants to show a nondiscriminatory reason for the reduction. Defendants reassert that plaintiff missed work due to illness, not to their actions. While this statement explains why plaintiff may have missed work on some days, it does not explain why plaintiff had fewer hours on the dates that she worked. Defendants do not allege a legitimate nondiscriminatory reason for the reduction. Defendants have failed to meet their burden and they are therefore not entitled to summary judgment on this claim.

**5.** Plaintiff's work records provide this evidence. Plaintiff cites these records in discussing other issues. Because the evidence is in the record, the Court has the discretion to consider it in determining whether plaintiff is able to make a prima facie showing of retalia-

**B. Outrage/Intentional Infliction of Emotional Distress**

■ Defendants also argue that they are entitled to summary judgment on plaintiff's claims of intentional infliction of emotional distress (the tort of outrage). Kansas law requires plaintiff to demonstrate that (1) defendants' conduct was intentional or in reckless disregard of plaintiff; (2) defendants' conduct was extreme and outrageous; (3) a causal connection exists between defendants' conduct and plaintiff's mental distress; and (4) plaintiff's mental distress was extreme and severe. *Roberts v. Saylor,* 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981). The Kansas Supreme Court has established two threshold requirements which must be satisfied, and which the Court must determine as a matter of law. *Id.* First, the Court must ascertain whether defendants' conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. *Id.* If so, the Court then determines whether the emotional distress suffered by plaintiff is so severe that no reasonable person should be expected to endure it. *Id.* If plaintiff's claim fails either of these threshold requirements, the claim will not survive.

■ To declare that defendants' conduct may be regarded as "extreme and outrageous," the Court must conclude that defendants' behavior meets the following standard:

> Liability may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. It was further said that liability

tion. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir.1998). Because the Court can easily find the relevant information, the Court exercises its discretion and considers this evidence.

may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, "Outrageous!" It should be understood that liability does not arise from mere insults, indignities, threats, annoyances, petty expression, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind. The law should not intervene where someone's feelings merely are hurt ... Conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society.

*Roberts*, 230 Kan. at 293, 637 P.2d at 1179. Kansas courts have been extremely reluctant to extend actions for outrage to employment discrimination and sexual harassment claims. *See Laughinghouse v. Risser*, 754 F.Supp. 836, 843 (D.Kan.1990); *see also Bolden v. PRC Inc.*, 43 F.3d 545, 554 (10th Cir.1994); *Schartz v. Unified School Dist. No. 512*, 953 F.Supp. 1208, 1221 (D.Kan.1997) (liability for tort of outrage rarely arises in discrimination and harassment context). Because "extreme and outrageous" conduct is such a high standard, and because of courts' reluctance to extend outrage actions to employment discrimination and harassment claims, it is difficult to maintain an outrage claim in the employment context under Kansas law. The existence of a hostile work environment sufficient to support a Title VII claim does not necessarily require a finding of outrageous conduct. *See, e.g., Varley v. Superior Chevrolet Automotive Co.*, 1997 WL 161942, *16 (D.Kan.); *Anspach v. Tomkins Indus., Inc.*, 817 F.Supp. 1499, 1507 (D.Kan.1993), *aff'd*, 51 F.3d 285, 1995 WL 133385 (10th Cir.1995).

Kansas courts have rarely found conduct to be sufficiently outrageous to survive summary judgment, and those cases involved highly shocking and egregious conduct, especially repeated physical threats and racially or sexually abusive language. *See, e.g., Taiwo v. Vu*, 249 Kan. 585, 593, 822 P.2d 1024 (1991) (defendant assaulted, battered, falsely imprisoned, falsely accused, and induced an employee to falsely accuse the plaintiffs); *Laughinghouse*, 754 F.Supp. at 843 (defendant continually harassed plaintiff over a two-year period, including "screaming and cursing," "unwanted touchings and sexual comments," and "fits of rage which included throwing things and tearing up files," because plaintiff would not sleep with defendant); *Gomez v. Hug*, 7 Kan.App.2d 603, 604–05, 645 P.2d 916 (1982) (defendant employer verbally accosted plaintiff employee with vulgar racial slurs, grossly offensive insults, and intense threats of violence over a period of several days); *see also Bernard v. Doskocil Cos., Inc.*, 861 F.Supp. 1006, 1015 (D.Kan.1994).

In evaluating whether plaintiff has alleged conduct which is sufficiently outrageous to survive summary judgment, the Court notes that plaintiff has alleged numerous acts of misconduct by Lehmann and asserted that these acts are sufficient to show that the corporate defendants acted intentionally or recklessly. While Lehmann is liable for his own intentional acts, the other defendants are not liable for his acts. The corporate defendants are only liable if their own acts are intentional or reckless, because Lehmann's conduct was not within the scope of his employment. *See Anspach*, 817 F.Supp. at 1506; *see also Meininger v. Swift–Eckrich, Inc.*, 1995 WL 42700 (D.Kan.1995). The Court must therefore determine whether the actions of the corporate defendants, including their reaction to plaintiff's complaints about Lehmann, rise to the level of outrageous conduct.

Plaintiff alleges that she complained to management each day that any alleged

inappropriate conduct occurred. Plaintiff also alleges that Fink referred to her as "Mrs. Lehmann" on more than one occasion and attempted to get her to date Lehmann. When she refused, Fink gave her a poor performance evaluation. Plaintiff does not allege any unwanted sexual advances by any supervisor personnel. While plaintiff alleges that Fink threatened her with physical violence if she reported Lehmann's actions to Bernat, her evidence merely shows that she felt threatened by his actions. Such evidence does not show that Fink made physical threats to plaintiff. *See Byle v. Anacomp, Inc.,* 854 F.Supp. 738, 747–48 (D.Kan.1994). In short, defendants' conduct boils down to their failure to act on plaintiff's complaints and Fink's apparent endorsement of Lehmann's conduct.

■ Some of Lehmann's actions amount to "mere insults, indignities, threats, annoyances, petty expressions, or other trivialities." *See Roberts,* 230 Kan. at 293, 637 P.2d 1175. Plaintiff's allegations that Lehmann pulled her hair on more than ten occasions, that he made repeated innuendos about oral sex, and other vulgar and offensive remarks, place Lehmann's conduct beyond the type of conduct that even thick-skinned employees should be expected to endure in the workplace. When the Court considers the sum of Lehmann's actions, the Court finds that his conduct is sufficiently outrageous to survive defendants' motion for summary judgment. Plaintiff alleges that defendants completely ignored Lehmann's actions and harassed plaintiff about the situation by referring to her as "Mrs. Lehmann." The Court cannot find as a matter of law that defendants' actions were not reckless and outrageous. *Miller v. Bircham, Inc.,* 874 F.Supp. 337, 341 (D.Kan.1995). As such, plaintiff survives the first prong of a claim of outrage. *See id.*

Defendants argue that this case is similar to *Beam v. Concord Hospitality, Inc.,* 873 F.Supp. 491 (D.Kan.1994), where the court found that the employer's conduct was not outrageous. This case differs, however, in two important ways. First, *Beam* involved only one incident of unwanted touching, not the numerous incidents alleged here. *See id.* at 495. Second, the employer in *Beam* actively responded ·to plaintiff's complaints and attempted to end the inappropriate behavior. *See id.* at 495–96. In the present case, Fink did not attempt to alleviate the problem and in fact he attempted to dissuade plaintiff from reporting the problem to anyone else. Because of these differences, the Court is not persuaded that *Beam* shows defendants' entitlement to summary judgment.

■ Plaintiff is unable to meet the second required showing, however, because no reasonable jury would find that her distress is so severe, genuine and extreme that no reasonable person should be expected to endure it. The extreme distress necessary to meet the second prong must be reasonable and justified, and there can be no liability if plaintiff appears to suffer exaggerated and unreasonable emotional distress. *Roberts,* 230 Kan. at 294, 637 P.2d at 1180. Plaintiff alleges that as a result of the sexual harassment, she cannot get close to people or trust them, that she cannot touch her children or anything intimate, that she is afraid to go outside her home, and that she clams up in sexual situations. Plaintiff also alleges that she continues to suffer headaches from Lehmann's hair pulling. Even accepting plaintiff's alleged injuries, the Court finds that no reasonable jury would find that such symptoms are a reasonable response to the misconduct involved and that plaintiff suffers them "in such extreme degree the law must intervene." *Neufeldt v. L.R. Foy Const. Co., Inc.,* 236 Kan. 664, 667, 693 P.2d 1194, 1196 (1985).

Plaintiff's evidence of injury consists of (1) her own testimony where she lists the injuries she alleges and (2) testimony from two coworkers that plaintiff appeared to be under a lot of stress, came to work after she had been crying, and cried as she told

a coworker about Lehmann's actions. The evidence shows, however, that plaintiff has not consulted a physician or sought other professional help regarding her emotional distress or headaches. Plaintiff's testimony alone does not support a finding of emotional distress so severe that no reasonable person should be expected to endure it. *Ramirez v. IBP, Inc.,* 1994 WL 86647 (D.Kan.1994); *see also Allin v. Schuchmann,* 886 F.Supp. 793, 800 (D.Kan.1995). In addition, the testimony of plaintiff's coworkers shows that plaintiff suffered some emotional strain from defendants' actions, but the fact that plaintiff cried on occasion does not show that she suffered emotional distress to such an extreme degree that no reasonable person could endure it. Plaintiff's complete failure to seek medical treatment or provide medical support for her claims cuts heavily against severe emotional distress. *See Byle v. Anacomp, Inc.,* 854 F.Supp. 738, 748 (D.Kan.1994); *Caplinger v. Carter,* 9 Kan.App.2d 287, 292, 676 P.2d 1300, 1305 (Kan.App.1984); *Allin,* 886 F.Supp. at 800; *Ortega v. IBP, Inc.,* 1994 WL 373888 (D.Kan.1994); *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499 (D.Kan.1993). In short, there is no evidence to suggest that plaintiff's distress is "so severe and extreme as to result in liability." *Roberts,* 230 Kan. at 294, 637 P.2d at 1175. Defendants are therefore entitled to summary judgment on plaintiff's claim of outrage.[6]

## C. Integrated Enterprise

IMS argues that it is not liable under Title VII because it was not plaintiff's "employer."[7] To be liable under Title VII, a defendant must be plaintiff's employer. *See* 42 U.S.C. § 2000e–2; *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1361 (10th Cir.1993). Plaintiff argues that IMS is part of an integrated enterprise with the other corporate defendants, and therefore is liable for plaintiff's claims.

■ The integrated enterprise test was adopted by the National Labor Relations Board ("NLRB") as a self-imposed jurisdictional restriction on the definition of "employer" under Title VII. *See National Labor Relations Bd. v. Welcome–American Fertilizer Co.,* 443 F.2d 19 (9th Cir. 1971); *Spicer v. Arbor Nall Nursery, Inc.,* 1995 WL 42660 (D.Kan.1995). The Tenth Circuit has applied the integrated enterprise test when defining "employer" in Title VII cases. *See Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991). The law allows businesses to incorporate to limit liability and isolate liabilities among separate entities. *Frank,* 3 F.3d at 1361. The integrated enterprise theory, however, makes corporations liable for another corporation's actions when the corporations are closely connected. *See Eichenwald v. Krigel's, Inc.,* 908 F.Supp. 1531, 1559 (D.Kan.1995).

■ The Court must weigh four factors to determine whether sufficient integration exists to treat the corporations as a single, integrated "employer." *Radio and Television Broad. Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *Frank,* 3 F.3d at 1362. "The factors are (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Eichenwald,* 908 F.Supp. at 1541 (citing *Frank,* 3 F.3d at 1362). The first three factors are weighed more heavily than the last. *Eichenwald,* 908 F.Supp. at 1541. The presumption of limited liability

---

**6.** Plaintiff's *Motion To Amend And Include Claim For Punitive Damages* (Doc. # 78) sought to include a state law claim for punitive damages on her tort of outrage claim. The motion is untimely and now moot, because plaintiff no longer has a pending state law claim. The Court therefore denies plaintiff's motion.

**7.** Defendant Iowa Trucking Company also joins this motion. The Court has sustained ITC's *Motion To Dismiss* (Doc. # 48) for lack of personal jurisdiction; and therefore only considers the arguments that relate to IMS.

remains the rule. *See Johnson*, 814 F.2d at 981. "Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary—domination similar to that which justifies piercing the corporate veil—is sufficient to rebut this presumption, [ ], and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions." *Platt v. Kini L.C.*, 10 F.Supp.2d 1229, 1232 (D.Kan.1998) (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir.1997). Underlying the integrated enterprise test is the requirement "that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1070 (10th Cir.1998).

While the integrated enterprise theory is not the only theory that can make IMS liable, plaintiff only argues that IMS is part of an integrated enterprise and references these factors in her brief. Defendants do not contest the use of this theory. The Court therefore applies the integrated enterprise factors in consideration of IMS's motion. *Dunn v. Tutera Group*, 181 F.R.D. 653, 659 (D.Kan.1998).

■ Plaintiff fails to show that IMS qualifies as her employer for purposes of Title VII. While the entire Heart of America umbrella shares a common owner, Mike Whalen, this fact alone is insufficient to make IMS liable. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir.1993); *Lockard*, 162 F.3d 1062. Plaintiff provides evidence that IMS is also interrelated with the rest of the corporations under Heart of America, because employees transfer to different restaurants and hotels under the umbrella. In addition, the restaurants and hotels transfer merchandise within the entire Heart of America umbrella. All of the restaurants and hotels use the same policies and procedures, including sexual harassment policies. Most importantly, IMS shares a corporate office and telephone number with all other corporations under the umbrella.

IMS and all other corporate defendants also share two common managers, Mike Whalen, president, and Kirk Whalen, general counsel. In addition, all Heart of America restaurants and hotels contract for management through HOAM.

Plaintiff nonetheless fails to show that IMS exerts so much control over employment decisions outside of its own businesses that the Court must hold it liable for plaintiff's claims. This is the most crucial factor of the four-part test. *Frank*, 3 F.3d at 1363; *Lockard*, 162 F.3d 1062. "The critical question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Frank*, 3 F.3d at 1363 (*quoting Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)).

While IMS employed the same policies and procedures as all other Heart of America corporations, "broad general policy statements regarding employment matters are not enough" to make the required showing of centralized control over labor relations. *Frank*, 3 F.3d at 1362; *Lockard*, 162 F.3d 1062. Plaintiff produces no evidence indicating that IMS played any role in implementing or effecting these policies outside of its own businesses. *See Lockard*, 162 F.3d 1062. The existence of common policies is not enough to demonstrate that IMS had centralized control of labor relations, especially those that affected plaintiff. *Id.* Plaintiff must show that IMS controlled the day-to-day employment decisions of the restaurant where plaintiff worked. *Frank*, 3 F.3d at 1363; *Tatum v. Everhart*, 954 F.Supp. 225, 229 (D.Kan. 1997). IMS must actually exercise day-to-day control; potential control is not sufficient. *Frank*, 3 F.3d at 1363. The Tenth Circuit has emphasized that evidence of plaintiff's actual experience as an employee is especially important. *See id.* Plaintiff

892

fails to provide any evidence that IMS hired plaintiff, fired plaintiff, or supervised plaintiff's work on a regular, daily basis. *See id.* While HOAM employs the managers who make day-to-day employment decisions at all Heart of America restaurants and hotels, plaintiff provides no evidence that managers at IMS restaurants and hotels control any decisions outside of IMS-owned businesses. There is no evidence that the only common managers, Mike Whalen and Kirk Whalen, exercised any control over day-to-day employment decisions. Plaintiff does not provide any evidence that IMS controlled her employment, held itself out as controlling, or even appeared to control her employment in any way. *See Platt,* 10 F.Supp.2d at 1232. Without such evidence, plaintiff is unable to overcome the strong presumption that IMS is not plaintiff's employer for Title VII purposes. *See Frank,* 3 F.3d at 1362.[8] IMS is therefore entitled to summary judgment on plaintiff's claims against it.

**IT IS THEREFORE ORDERED** that the *Motion For Summary Judgment Of All Defendants Except Tom Lehmann* (Doc. # 99) filed November 16, 1998 by Heart of America Management, Iowa Machine Shed Company, and Kansas Cooking, Inc. be and hereby is **SUSTAINED** in part and **DENIED** in part. Defendants are entitled to summary judgment on plaintiff's outrage claim and IMS is entitled to summary judgment on all claims. Defendants are not entitled to summary judgment on plaintiffs retaliation claim.

**IT IS FURTHER ORDERED** that plaintiff's *Motion To Amend And Include Claim For Punitive Damages* (Doc. # 78)

filed October 28, 1998 be and hereby is **DENIED.**

---

**8.** The Court notes that the Tenth Circuit is reluctant to make parent or franchisor corporations liable for the acts of their subsidiaries or franchisees. *See Lockard,* 162 F.3d 1062; *Evans,* 936 F.2d at 1090. Even if the Court were to consider all corporations under the Heart of America umbrella to be subsidiaries or franchisees of the umbrella company (which they are not), the Court is especially reluctant to hold one subsidiary liable for the acts of another subsidiary. While plaintiff cites *Eichenwald,* 908 F.Supp. 1531, to show that separate subsidiaries can be part of an integrated enterprise, the key difference is that all corporations in *Eichenwald* had a joint payroll and relied on a single personnel department that was located at the parent corporation's office. *See id.* at 1559. Plaintiff has not shown similar evidence of centralized control of labor relations.